# Richmond

## James C. Fink v. Higgins Gas and Oil Company, Inc.

November 27, 1961.

Record No. 5340.

Present, All the Justices.

*W. H. Jolly* and *Harvey S. Lutins* (*T. W. Messick; Kime & Jolly*, on brief), for the plaintiff in error.

*Howard C. Gilmer, Jr.* and *A. M. Harman, Jr.* (*Gilmer, Harman & Sadler*, on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

■ This appeal resulted from the entry of an order which sustained a motion of defendant, Higgins Gas and Oil Company, Incorporated, to strike the evidence of plaintiff, James C. Fink, and which awarded defendant a summary judgment. In his motion for judgment plaintiff sought damages for injuries he allegedly received on July 3, 1956, due to an electric shock when he came in contact with an uninsulated wire. He alleged defendant was negligent in removing its compressor located on his premises in that the electric wire connected thereto was not properly insulated when it was severed from the compressor.

The evidence was heard without the intervention of a jury. In October 1952, James C. Fink purchased a combination retail grocery store and service station on Cloyd's Mountain, Pulaski County, Virginia. Defendant, who was a dealer, supplied him with gasoline and oil until about November 4, 1955, at which time plaintiff discontinued selling gasoline, but continued to sell defendant's oil. The gasoline pumps and compressor were the property of defendant. On July 1, 1956, plaintiff went to West Virginia to visit his mother. The next day defendant's employees removed the gasoline pumps and also the compressor which was installed in a small unlighted storage room under the rear of the building. When plaintiff returned to the store from West Virginia in the early morning of July 3rd, he observed that the pumps had been removed. He asked his wife, Mrs. Ada Fink, and his grandson, Eddie Fleshman, "what happened to the pumps", and he was informed that defendant's workmen had removed them and also the compressor.

Plaintiff raised quail and pheasants on the premises, and since it was his scheduled time to spray for lice and roaches, he and his grandson proceeded to the storage room where the disinfectant was kept. When they opened the door, they smelled smoke and saw it coming from a bucket which contained old waste, copper wire, cup grease etc. Plaintiff testified: "I run to the bucket and set it outside and come back in and turned around and the water pipe I was standing on, as well as I remember, and I backed and I throwed my left arm into an exposed wire. Of course, I didn't know that at the time but then it knocked me out of there and unconscious for, I don't know how long—just a few minutes—and it put me in a shape that I'm in today."

In his assignments of error plaintiff challenges the correctness of the court's rulings in granting defendant's motion to strike his evidence and in entering summary judgment; in refusing to admit certain evidence, and in refusing after he had rested his case to grant his motion to permit further testimony showing that the electric wire which caused his injury was the one removed by defendant from the compressor.

Dr. Walter J. Walker, plaintiff's local physician, testified that he referred Fink to Dr. Walter O. Klingman, who was associated with the Department of Neurology and Psychiatry at the University of Virginia Hospital, for treatment. Fink made a number of outpatient visits to Dr. Klingman. Dr. Walker received a copy of a letter, dated January 21, 1957, written by Dr. Klingman to the State Commissioner of Insurance, in which he gave a summary of Fink's case report. The letter stated that it was written at the request of Fink because he had a policy of insurance which he thought covered loss of time resulting from accidental bodily injury upon which he had been unable to collect. Defendant objected to the reading of the letter in evidence by Dr. Walker on the grounds that the best evidence was that of Dr. Klingman himself, and that he was entitled to cross-examine Dr. Klingman on his report. There is no merit in plaintiff's contention that Dr. Walker should have been permitted to read the letter in evidence because the report was made to him in the regular course of business by a consulting physician. The court properly excluded the letter as it was hearsay evidence and inadmissible.

After counsel for plaintiff stated that plaintiff rested his case, counsel for defendant moved the court to strike plaintiff's evidence on the ground that plaintiff had not shown that the wire he came in contact with was the wire that was disconnected from the compressor by defendant. Counsel for plaintiff contended there was sufficient evidence to establish that fact. The court reviewed the evidence pertaining thereto and stated that as far as it could recall there was no evidence introduced that the wire in question was ever connected to the compressor. At this point, counsel for plaintiff said: "If it is, your Honor, it's been purely an oversight. We would like to correct it." Whereupon the court ruled that it was too late to correct an oversight and the following colloquy transpired:

"The Court: Mr. Messick, you're quoting something that is not in the evidence, or not in the record, as I recall it and that's why I asked you to have it read back to me what the evidence was and who said it,

"Now, my understanding of the law is that you can't assume negligence because of the happening of an accident and neither can you assume that a wire hanging down had previously been connected to a compressor, electric light or to any other thing, and, therefore, I sustain the motion.

"Mr. Messick: Well, wouldn't your honor—

"Mr. Gilmer: Thank you very much, sir.

"Mr. Messick: Wouldn't your Honor permit us to—

"The Court: No, sir; not to reopen the case after you have rested and after the plaintiff has—after the defendant rather has made a motion to strike.

"Mr. Messick: We most respectfully except and we say that the only electric wire in there was connected to the compressor."

Counsel for plaintiff recalled Fink so that his additional testimony would be in the record in this appeal. He testified, among other things, that the electric wire he came in contact with was the one formerly connected to the compressor which defendant had removed, and that there was no other electricity in the room at the time.

Thus the crucial question posed is whether the court erred in not permitting plaintiff, after he had rested his case, to offer additional testimony to show that the electric wire which caused his alleged injury was the one that was disconnected from the compressor by defendant.

In *Laughlin* v. *Rose, Adm'x,* 200 Va. 127, 129, 104 S. E. 2d 782, we said:

"* * * It is well settled that the reopening of a case and the admission of additional evidence after one or both parties have rested is a matter within the discretion of the trial court and its action will not be reviewed unless it affirmatively appears that this discretion has been abused or unless the admission of such additional evidence works surprise or injustice to the other party. 19 Mich. Jur., Trial, § 9, pp. 12, 13, and cases there cited. See also, 88 C. J. S., Trial, §§ 105, 106, p. 220 ff. * * *"

"* * * The trial court has a wide discretion in passing on a motion to reopen, and such discretion is to be liberally exercised in behalf of allowing the whole case to be presented, for the best advancement of the ends of justice. While the exercise of this discretion should not be hampered by unreasonable conditions, such discretion is judicial and not arbitrary. It should be reasonably exercised so as not to injure the opposite party through surprise or otherwise, and so as not to deprive either party of the opportunity to introduce material evidence." 88 C. J. S., Trial, § 104, pp. 217, 218.

In 53 Am. Jur., Trial, § 123, p. 109, it is stated:

"* * * The exigencies of each particular case go far in controlling the discretion of the court in this regard; although it has been said that the court should not reopen a case except for good reasons and on proper showing, it is not, on the other hand, justified in closing the case until all the evidence, offered in good faith and necessary to the ends of justice, has been heard."

The early case of *Owen* v. *O'Reilly*, 20 Mo. 603, was a suit brought for wages. At the trial before a jury, plaintiff introduced evidence showing the services rendered for which he sought recovery, and then closed his case without having proved the value of such services. Whereupon the court instructed the jury that plaintiff could not recover. Plaintiff then offered to produce evidence establishing the value of his services by witnesses present. The court denied his request and he submitted to a nonsuit. On appeal the court held that the trial court should have permitted plaintiff to introduce such testimony and said:

"It was not a proper exercise of judicial discretion to refuse the plaintiff in this case his motion for leave to introduce this testimony. It was clearly an omission—a mere oversight—and the court ought at once to have suffered him to correct it. * * *

"There could have been no necessity to have forced the plaintiff to suffer a nonsuit, when the inadvertence committed by him was so easily remedied." 20 Mo. at p. 604.

In *Meacham* v. *Moore*, 59 Miss. 561, the trial court refused to permit plaintiffs to introduce their judgment in attachment, which was necessary to prove their case, after they had announced the closing of their evidence. In reversing and remanding the case, the court had this to say:

"Reluctant as we are to interfere with the exercise of the discretion of the courts whose proceedings are subject to our revision, we are constrained to hold that, upon the presentation made by this record, the appellants should have been permitted to supplement their evidence by introducing the evidence of their judgment in attachment, which was necessary to maintain the issue between them and the claimants. The omission to introduce it before they announced the closing of their evidence, from whatever cause that omission occurred, should not have been made fatal to their cause, but they should have been allowed to supply the omission whenever it was discovered." 59 Miss. at p. 562.

In *Sanders* v. *Ryan*, 112 Ind. App. 470, 41 N. E. 2d 833, Martha Sanders sought damages from Ryan and others for injuries she sustained in an automobile collision. At the close of plaintiff's evidence, defendants moved for a directed verdict on the grounds that the evidence was insufficient to prove liability of defendants for the act of the driver under the doctrine of *respondeat superior*. After the court had sustained the motion, plaintiff asked leave to reopen her case and to introduce additional evidence. Her motion was objected to by defendants and it was denied. Whereupon, the court instructed the jury to return a verdict for defendants, which was accordingly done. The appellate court held that the trial court abused its discretion in refusing to grant plaintiff's motion to reopen the case for additional testimony, reversed the judgment and stated the opinion that: "* * * [U]nder the circumstances set forth in the said verified showing coupled with the fact that the appellant was earnestly of the belief that she had made a case by the testimony which she had·introduced, and in view of the fact that the said Scritchfield [driver] was present in the courtroom and that his testimony could be submitted without any inconvenience to the defendant and with no appreciable amount of delay, that the court should have sustained said motion and permitted said testimony. * * *" 112 Ind. App. at p. 477.

See also *Wickham* v. *Torley*, 136 Ga. 594, 71 S. E. 881; *Lancaster* v. *Arkansas Lime Co.*, 155 Ark. 358, 244 S. W. 354; *Bowman* v. *Hall*, 83 Ariz. 56, 316 P. 2d 484; *Hill* v. *Melton*, (Tex. Civ. App., February 28, 1958), 311 S. W. 2d 496; *Virginia R. & P. Co.* v. *Gorsuch*, 120 Va. 655, 91 S. E. 632; Bowers, *Judicial Discretion of Trial Courts*, § 498, p. 488, *et seq.*

In the present case, counsel for plaintiff stated to the court that he thought the evidence adduced was sufficient to show that the electric wire with which plaintiff came in contact was the one defendant's employees disconnected from the compressor. However, since the court entertained the contrary view, counsel for plaintiff stated that the omission was "purely an oversight" and "we would like to correct it." Fink was present in the courtroom and the admission of his additional testimony on the point raised would not have caused defendant any inconvenience or consumed any appreciable time. It would not have worked a surprise or injustice on defendant. As a matter of fact counsel for defendant was surprised that such evidence was not introduced. The court asked during argument on the motion to strike if anyone had said "that wire that was hanging down in the picture or

the wire that Mr. Fink backed into was ever in anyway connected to the compressor?" Counsel for defendant replied: "No, sir; not a word of testimony. That's what I've been watching all through this trial." He further stated: "I was astounded that they let Mrs. Fink leave the stand without asking her about these wires."

We hold that under the circumstances the trial judge who, as aforesaid, was hearing the case without the intervention of a jury, erred in not permitting the plaintiff to introduce the additional testimony requested.

The judgment is reversed and the case remanded for a new trial.

*Reversed and remanded.*